### TELEGRAPH COMPANY v. EYSER.

Under the eleventh section of the act of June 1st, 1872, " to further the administration of justice " (and which allows any person desiring to have a judgment, decree, or order, &c., reviewed on error or appeal, and to stay proceedings during the pendency of such writ of error or appeal, to " give the *security* required by law therefor within sixty days after the rendition of such judgment, decree, or order," &c.), it is not necessary to make it a supersedeas that the writ of error be served as was required by the twenty-third section of the Judiciary Act, or the supersedeas *bond* be filed, within ten days (Sundays excepted) after the rendering of the judgment complained of. The supersedeas bond may be executed within sixty days after the rendition of the judgment, and the writ may be served at any time before or simultaneous with the filing of the bond.

ON motion, by *Mr. J. Hubley Ashton*, for a supersedeas to the Supreme Court of Colorado Territory and the District Court in and for the county of Arapaho in that Territory. The case was thus:

The Judiciary Act of 1789, after enacting by its twenty-second section that final judgments in the Circuit Court may be examined and reversed, or affirmed in the Supreme Court, the citation being in such case signed by a judge of the Circuit Court or justice of the Supreme Court, and the adverse party having at least thirty days' notice, . . . continues:

" And every justice or judge signing a citation on any writ of error as aforesaid, shall take good and sufficient security

that the plaintiff in error shall *prosecute his writ to effect, and answer all damages and costs if he fail to make his plea good."*

The next section, however, thus proceeds :

"SECTION 23. A writ of error, as aforesaid, shall be a *supersedeas and stay of execution* in cases *only* where the writ of error is served by a copy thereof being lodged in the clerk's office, where the record remains, within *ten* days (Sundays exclusive) after rendering the judgment complained of; until the expiration of which term of ten days executions shall not issue in any case where a writ of error may be a supersedeas."

By an act of 1803, amendatory of the Judiciary Act, "appeals" were made subject to the same rules, regulations, and restrictions as were prescribed in cases of writs of error.

Under these and other enactments,* and under rules of court and judicial decisions, it had been long settled that when the writ of error was not a supersedeas and did not stay execution, the security (in practice a bond) required was to be only to such an amount as should be sufficient to answer all such *costs,* as upon an affirmance of the judgment or decree might be adjudged or decreed to the respondent in error; but that when the writ of error would operate as a supersedeas, the supersedeas bond in the Circuit Court must be taken with good and sufficient security that the plaintiff in error or appellant shall prosecute his writ or appeal to effect, and answer all damages and costs if he fail to make his plea good. And that such indemnity, where the judgment or decree is for the recovery of money not otherwise secured, must be for the whole amount of the judgment or decree, including just damages for delay and costs and interest, on the appeal.

It had been long equally settled, when the writ of error was meant to operate as a supersedeas, that unless the complete security required was given within ten days, the writ could not be a supersedeas; the approving and filing of the supersedeas bond, or security, within ten days being as much

---

* Act of December 12th, 1794, 1 Stat. at Large, 404.

obligatory as the service of the writ and lodging the copy within that time; these latter things, though so much matter of form, being made indispensable under the words of the twenty-third section of the Judiciary Act. The supersedeas bond, however, obviously is, to the party having the judgment whereon execution is stayed, the practically important part of the matter.

In this state of things, Congress, by the eleventh section of an act of June 1st, 1872, entitled "*An act to further the administration of justice*," thus enacted:

"Any party or person, desiring to have any judgment, decree, or order of any District or Circuit Court reviewed on writ of error or appeal, and to stay proceedings thereon during the pendency of such writ of error or appeal, may give the *security* required by law therefor *within sixty days after the rendition of such judgment*, decree, or order, or afterward, with the permission of a justice or judge of the said appellate court."

But while this new enactment allowed the party desiring to have a judgment, &c., reviewed, to give the *security* required by law within *sixty* days, it said nothing about the old matter of lodging a copy of a writ of error "in the clerk's office where the record remained," nor indeed anything about making writs of error or appeals a supersedeas at all. It said simply that the party desiring to take a writ of error, &c., "may give the security required by law therefor within sixty days," &c. And the enactment thus contained obviously the germ of certain questions, as *ex. gr.*:

1st. Whether—without repealing any other provisions of the twenty-second and twenty-third sections of the old Judiciary Act, and the practice as settled by judicial decision upon it, and which required the security to be given within ten days—the new act meant only to enlarge the time for giving the *security*, leaving it still obligatory on the party desiring to take a writ of error, to serve as formerly his writ, by lodging a copy "in the clerk's office where the record remained, within ten days," &c., and to *file* within that time the supersedeas bond.

2d. Whether it meant to supersede the entire provision of the old law, with regard to the *time* within which the acts necessary to be done by the party to entitle him to a stay of proceedings were required to be performed, requiring, however, the same old *acts*, including a service of the writ in the form prescribed, to be done. Or finally, and

3d. Whether it meant to dispense entirely with everything, including perhaps the provision that no execution shall issue within ten days, but the most practically important matter, the giving of the security required by law, and meant to enlarge the time for doing this until sixty days after the rendition of the judgment.

Immediately on the passage of this act, Mr. Phillips, confessedly the highest authority not judicial, in a matter of practice, in a new edition of his "Statutory Jurisdiction and Practice of the Supreme Court of the United States,"* called attention to the "questions not without difficulty, suggested by a comparison of the two acts:" the act, namely, of 1872, and the old Judiciary Act. And—while presenting in his book the act at large in order that before the interpretation of it should be passed upon and settled by the judgments of the court, the practitioner who was compelled to construe it, might "decide for himself the questions suggested;" and acknowledging the difficulties and embarrassments necessarily attendant on the expression of his own opinion in advance as to the proper interpretation of its several sections— that acute and learned author inclined, in the absence of judicial decision on the new law, to think—

"That while the law has secured the *right* to stay proceedings by giving security in sixty days, the party is still bound to lodge his writ as required by the act of 1789, within ten days, and that in the absence of a supersedeas bond filed within that period the execution may issue. But that if within sixty days the bond is filed, then the judge may take such action for its stay or recall or give such order as the circumstances of the case may require to stay proceedings."

* Second edition, p. 107.

And this view, in his judgment, was " fortified by the provision that this security may be given *at any time after* the sixty days with the permission of a judge of the appellate court."

The idea which was at the foundation of the learned author's view obviously was, that as this court had frequently decided that the writ of error and the appeal were the means by which the Supreme Court was enabled to exercise the appellate power, matters connected with them could not be matters of form, but raised always a question of jurisdiction, as was shown by the numerous decisions dismissing writs or appeals for the least defect about either.

In this state of things Eyser had obtained a judgment in the District Court in and for the county of Arapaho, Colorado Territory, affirmed in the Supreme Court of the Territory, against the Union Telegraph Company, on the 6th of *September*, 1873.

On the 8th of October following—*that is to say, twenty-eight days afterwards*—the telegraph company took a writ of error, and on *that* day duly served a citation to the adverse party, properly signed by a judge, and filed in the office of the clerk of the court a sufficient supersedeas bond, conditioned and approved according to law.

The writ of error, it will thus be seen, was not sued out " within ten days after rendering the judgment complained of," and, of course, no copy of it was " lodged in the clerk's office where the record remained," nor any supersedeas bond *then* given.

In this state of things, the counsel of Eyser, the plaintiff in the case, assuming, as had been apparently the view of Mr. Phillips, that the act of 1872 only enlarged the time within which " the *security* required by law " might be given, and that what was done by the other side was no supersedeas, applied to the court below for an execution upon his judgment, notwithstanding the supersedeas bond, &c., given by the other side.

Hereupon the telegraph company applied to this court,

representing this last-mentioned fact, and representing further that they were afraid an execution would issue; and moved for a supersedeas to the said court commanding that further proceedings upon the judgment be stayed pending the writ of error.

*Mr. Ashton, in support of his motion :*

The question is new and of practical importance. We admit its difficulty, and that respect is due to the suggestion thrown out by an eminent writer at the bar to the contrary of the view on which our motion is founded. Professional opinion has been divided as to the meaning of the act, in which, without doubt, as finally passed, some things appear to be very curtly expressed.

But we submit that under the act of 1872, the writ of error, having been sued out and served, and security having been given sufficient to cover the amount recovered, within sixty days after the rendition of the judgment, the plaintiff in error has a right to have a stay of proceedings on the judgment.

The act would seem to declare and provide that the party may " stay proceedings " on the judgment *by giving* " the security required by law therefor within sixty days after the rendition of the judgment." It says that any party who *desires* to have any judgment reviewed on writ of error, and, during the pendency of such writ of error, to stay proceedings on such judgment, *may obtain a stay of proceedings* thereon, *if* he gives, within sixty days thereafter, security to cover the amount recovered.

In other words, the act would appear to repeal, by implication, so much of the twenty-third section of the act of 1789 as made the lodging of a copy of the writ within ten days a prerequisite to entitle the party to a stay of proceedings on the judgment. It is not necessary to contend that the act affects that other provision of the twenty-third section of the statute of 1789, which prohibits the issuing of an execution, in any case, until the expiration of ten days after rendering the judgment. That is a prohibition addressed to the court. It disables it from issuing execution within the time limited

by the act.   But the first provision of the twenty-third section, in regard to the operation of the writ as a supersedeas, was addressed to the *party*.  It required him to lodge a copy of the writ within ten days, if he desired the writ to be a supersedeas.

The act of 1872, however, renders compliance with that condition no longer necessary, and gives the party a right to stay proceedings upon only one condition, namely, that he give a supersedeas bond within sixty days after the rendition of the judgment.  If the requisite security is given within that period, and before execution issues, the writ has the effect of a supersedeas.  If execution issues before security is given, proceedings under it are subject to be stayed, if the party afterwards and within the sixty days, files the proper bond.

Any other construction of the act of 1872 sacrifices the substance to the form.  The substantial thing, under the old law, was the bond.  The lodging of a copy of the writ in the clerk's office was the merest form.  It cannot be denied that the act of 1872 has repealed the requirement that the *bond* shall be filed within ten days.  And Congress must have intended, when it authorized a party to give security within sixty days, to do away with the most formal and unimportant part of the whole procedure, namely, the lodging of a copy of the writ within ten days.

The eleventh section, we submit, was intended to supersede the entire provision of the old law, with regard to the time within which the acts necessary to be done by the party to entitle him to a stay of proceedings, were required to be performed.

*No opposing counsel.*

Mr. Justice SWAYNE delivered the opinion of the court.

This is an application for a writ of supersedeas or an order, to the Supreme Court of Colorado Territory, and to the District Court of the first judicial district in and for the county of Arapaho, in that Territory, commanding that further pro-

ceedings upon the judgment in this case be stayed pending the writ of error whereby the judgment was brought into this court for review. The judgment was affirmed by the Supreme Court of the Territory on the 6th of September, 1873. On the 8th of October following the defendant sued out a writ of error returnable to this court. It was duly served and returned. On the day last mentioned a citation was served on the adverse party, and a supersedeas bond in the sum of $12,000, conditioned and approved according to law, was filed in the proper office. The plaintiffs in error represent in their petition that the defendant in error has applied to the Supreme Court of the Territory for an order that execution issue on the judgment, notwithstanding the writ of error and the supersedeas bond, and that they are apprehensive such an order will be made. Hence this application here.

The twenty-third section of the Judiciary Act of 1789 declares "that a writ of error, as aforesaid, shall be a supersedeas and stay of execution in cases only where the writ of error is served by a copy thereof being lodged for the adverse party in the clerk's office where the judgment remains, within ten days, Sundays exclusive, after rendering the judgment or passing the decree complained of."

The second section of the act of 1803 makes appeals "subject to the same rules, regulations, and restrictions as are prescribed in law in cases of writs of error."

The twenty-second section of the act of 1789 requires "that every justice or judge signing a citation on any writ of error as aforesaid, shall take good and sufficient security that the plaintiff in error shall prosecute his writ to effect, and answer all damages and costs if he fail to make his plea good."

Where the judgment or decree is for money, not otherwise secured, the bond "must be for the whole amount of the judgment or decree, including just damages for delay and costs and interest on the appeal."* And such bond

---

* 29th Rule of this Court.

must be approved and filed within the ten days prescribed for the service of the writ of error.*

Such was originally the state of the law upon this subject. It frequently subjected parties to great inconvenience and sometimes to serious injury. If the writ were not served and the bond given within ten days from the rendition of the judgment or decree, the defendant, if it were for money, was liable to be compelled to pay, although he might ultimately be victor in the litigation. In such case he would lie out of the use of his money in the meantime, and finally be compelled to take the chance of getting it back, perhaps by further litigation. The facts and the law might be for him and yet the money be lost. If real estate were involved, he was liable to be turned out of possession and to lose all benefit from the property during the same period. It was frequently impossible to serve the writ and give the bond within the ten days, though both might readily have been done if more time were allowed.

The eleventh section of the act of June 1st, 1872, was intended to remedy these evils. That section is as follows:

"That any party or person, desiring to have any judgment, decree, or order of any District or Circuit Court reviewed on writ of error or appeal, and to stay proceedings thereon during the pendency of such writ of error or appeal, may give the security required by law therefor within sixty days after the rendition of such judgment, decree, or order, or afterward, with the permission of a justice or judge of the said appellate court."

These provisions are remedial, and, therefore, to be construed liberally. So far as there is any conflict with the pre-existing rules, the latter must yield. The intention of the lawmaker constitutes the law.† What is clearly implied in a statute is as effectual as what is expressed.‡ It is expressly declared that the supersedeas bond may be executed within sixty days after the rendition of the judgment, and

---

* Adams et al. *v.* Law, 16 Howard, 144; Hudgins *v.* Kemp, 18 Id. 533.

† United States *v.* Freeman, 3 Howard, 565.

‡ United States *v.* Babbit, 1 Black, 61.

later, with the permission of the designated judge. It is not said when the writ of error shall be served. Its issuance must, of course, precede the execution of the bond; and, as the judge who signs the citation is still required to take the bond, we think it is sufficiently implied that it may be served at any time before, or simultaneously with, the filing of the bond. Indeed, the giving of the bond alone is made the condition of the stay. The section is silent as to the writ. A construction which requires the service to be still within ten days from the rendering of the judgment, is, we think, too narrow. It is sustained by no sufficient reason, and would largely defeat the salutary purposes of the statute. The execution, approval, and filing of the bond are substantial. The filing of the writ is matter of form. Form, under the circumstances, must not be allowed to defeat substance, where the consequences would be of so serious a character. The application of the plaintiffs in error is founded upon this section. As we construe it, their case is within it. The order asked for will be directed to issue, unless this opinion shall render that procedure unnecessary.

Mr. Justice CLIFFORD, with whom concurred Mr. Justice DAVIS, dissenting:

Writs of error at common law, when bail was duly entered, operated as a supersedeas, but the twenty-third section of the Judiciary Act provides that a writ of error shall be a supersedeas and stay execution *in cases only* where the writ of error is served by a copy thereof being lodged for the adverse party in the clerk's office . . . within ten days, Sundays exclusive, after rendering the judgment or passing the decree. Such writs, as provided in the preceding section of that act, may be brought within five years after the judgment is rendered or the decree is passed; and that section also provides that every justice or judge signing a citation on any writ of error, as aforesaid, shall take good and sufficient security that the plaintiff in error shall prosecute his writ to effect, and answer all damages and costs if he

fail to make his plea good.*   Under that provision this court decided that the security to be taken from the plaintiff in error by the justice or judge signing the citation must be sufficient to secure the whole amount of the judgment.†
Where the writ of error is not a supersedeas and does not stay execution the security required and taken by the justice or judge signing the citation shall be only to such an amount as, in the opinion of the justice or judge taking the same, shall be sufficient to answer all such costs as, upon an affirmance of the judgment or decree, may be adjudged or decreed to the respondent.‡   But where the losing party desires to make the writ of error a supersedeas, and to stay execution, he must sue out the writ and serve the same by lodging a copy thereof for the adverse party in the clerk's office within ten days, Sundays exclusive, after the judgment is rendered or the decree is passed, and give the security required by the prior section in a sum sufficient to secure the whole amount of the judgment, except in certain special cases, as provided in the twenty-ninth rule of this court.   Within that period it is the absolute right of the party to adopt the necessary measures to stay execution pending the writ of error or appeal, and in order that he may not be prejudiced in the enjoyment of that right, the same section of the Judiciary Act provides that until the expiration of ten days no execution shall issue in any case where a writ of error may be a supersedeas, and also makes provision, in case the judgment or decree is affirmed, that the court affirming it may adjudge just damages to the respondent in the writ of error for his delay, and single or double costs, at their discretion. Repeated decisions of this court have established the rule that neither a writ of error nor an appeal is a supersedeas under the Judiciary Act unless the required security be given within the ten days mentioned in the twenty-third

---

* 1 Stat. at Large, 85.

† Catlett *v.* Brodie, 9 Wheaton, 553; Stafford *v.* Union Bank, 16 Howard, 140.

‡ 1 Stat. at Large, 404.

section of the act.* Compliance with the conditions speci-
fied in the twenty-third section of the Judiciary Act must
be shown in order that the writ of error or appeal may
operate as a supersedeas and stay execution, and the rule is
also well settled that if the writ of error be not sued out in
time to operate as a supersedeas this court cannot award a
stay of execution.† Unless the requirements of the act of
Congress are complied with, within the ten days allowed for
the purpose, no court can make a writ of error or appeal
operate as a stay of execution under the Judiciary Act.‡

Grant all that, when the question is tested by the Judiciary
Act, still it is insisted that the twenty-third section of the
Judiciary Act is repealed by the eleventh section of the act
entitled "An act to further the administration of justice,"§
so as to substitute sixty days in the place of ten days as pro-
vided in the former act.

By that act it is provided that the plaintiff in error or ap-
pellant in such a case " may give *the security* required by
law therefor within sixty days after the rendition of such
judgment, decree, or order, or afterwards, with the permis-
sion of a justice or judge of the said appellate court." Un-
doubtedly the security required by the twenty-second section
of the Judiciary Act to be given to prosecute the appeal
with effect may be given within sixty days from the date of
the judgment or decree, but the act to further the adminis-
tration of justice contains no provision whatever making
writs of error or appeals a supersedeas, or giving them the
effect to stay execution under any circumstances. They
have that operation and effect by virtue of the twenty-third
section of the Judiciary Act " in cases only where the writ
of error is served by a copy thereof being lodged for the

---

* Stafford *v.* Union Bank, 16 Howard, 135; Same Case, 17 Id. 275; Green
*v.* Van Buskerk, 3 Wallace, 448; Silsby *v.* Foote, 20 Howard, 290; Adams *v.*
Law, 16 Id. 144; Hudgins *v.* Kemp, 18 Id. 531.

† Saltmarsh *v.* Tuthill, 12 Howard, 387; Wallen *v.* Williams, 7 Cranch
278: Hogan *v.* Ross, 11 Howard. 294.

‡ The Roanoke, 3 Blatchford, 390.        § 17 Stat. at Large, 198.

adverse party in the clerk's office" . . . "within ten days, Sundays exclusive," from the date of the judgment or decree. No provision of a different character upon that subject is enacted in the new act, nor does it contain a word repugnant to the language or the requirements of the former provision. Execution is required to be stayed by the former provision for the term of ten days, but the new law does not contain any regulation upon that subject.

None of these suggestions can be controverted, but the argument is that inasmuch as Congress has extended the time for giving the security to prosecute the appeal to sixty days, it follows that the writ of error may be served within that time and still have the effect of a supersedeas, although the only section of the act of Congress which gives it that effect provides that it shall have such an operation *in cases only* where the service is made by lodging a copy of it in the clerk's office for the adverse party within ten days.

Ten days from the date of the judgment or decree is allowed by the former law to serve the writ of error, but the new act allows to a party desiring to stay proceedings sixty days to give the required security; and it even goes further and permits it to be given afterwards, with the permission of a justice or judge of the appellate court.

Questions not without difficulty, says Mr. Phillips, are suggested by a comparison of these two acts, as the time within which the security is to be given is alone acted on by the new act. Based on that suggestion the author inquires, very pertinently as it seems to me, does this alteration carry along with it a change of all the other provisions of the old act as to the lodging of the writ of error in the clerk's office within ten days, and the provision that no execution shall issue within the ten days? The answer to the question, as given by the author, is directly opposed to the opinion just read, which appears to proceed upon the ground that inasmuch as a change has been made in one of the conditions essential to a valid supersedeas it follows that the same change must be considered as made in all the other conditions, even though the new act contains no other language

to express any such intention, which, as it seems to me, reverses the standard rule of construction as expressed in a valuable maxim. often quoted. and applied in such discussions—*Expressio unius est exclusio alterius.* If Congress had intended to make other alterations in the prior regulations upon the subject it is fairly to be presumed they would have said so, as it is always to be presumed that the legislature when it entertains an intention will express it in clear and explicit terms.* If the legislature intended more, said Lord Denman, in *Haworth* v. *Ormerod,*† we can only say, that according to our opinion they have not expressed it; to which it may be added that the better rule of construction is to hold that the legislature meant what they have actually expressed, unless some manifest incongruity would result from doing so, or unless the context clearly shows that such a construction would be erroneous.‡ Words may sometimes be transposed, but they cannot be inserted.§ Intention, it is true, should govern, but it must be such an intention as the legislature have used fit words to express.|| Repeals by implication are not favored.¶ On the contrary, the leaning of the courts, says Mr. Justice Swayne,** is against the doctrine, if it be possible to reconcile the two acts of the legislature together. Our best judgment is, says Mr. Phillips, that while the law has secured the *right* to stay proceedings by giving security in sixty days, the party is still bound to lodge his writ, as required by the Judiciary Act, within ten days, and that in the absence of a supersedeas bond filed within that period the execution may issue; and in that view I concur, and consequently dissent from the direction and opinion of the court. Service of the writ of error by lodging a copy thereof in the clerk's office for the adverse party within ten days, *without more,* will not

---

* Potter's Dwarris, 219.                    † 6 Queen's Bench, 807.

‡ Rex v. Banbury, 1 Adolphus & Ellis, 142.

§ Lamond v. Eiffe, 3 Queen's Bench, 910.

|| Potter's Dwarris, 182; Brewer v. Blougher, 14 Peters, 178.

¶ Wood v. United States, 16 Peters, 342.

** McCool v. Smith, 1 Black, 470.

effect a stay of execution, but if the security required is given within sixty days the supersedeas becomes effectual from the time the required security is given.