UNITED STATES v. WILLIAMS.

(District Court, N. D. Alabama, S. D. March 14, 1908.)

1. CRIMINAL LAW—AIDING AND ABETTING—COMMON LAW.

A person not falling within the class described in a penal statute, may nevertheless, under the rules of the common law, be charged with aiding and abetting another person, embraced in the statute, in the com- mission of the crime.

2. STATUES—PENAL STATUTES—HOW CONSTRUED.

While it is true that it is a well-settled rule of law that penal statutes must be strictly construed, and that before a case can be held to fall within a penal statute it must come within the letter and spirit of the statute, yet if it comes within the spirit, and also within one reasonable interpretation of the letter, of the statute, it is sufficient, even though there may be a literal interpretation that might be put upon the statute which would not include the case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, §§ 322, 323.]

3. CARRIERS—INTERSTATE FREE PASS OR TRANSPORTATION — IMPROPER USE —WHEN STATUTE AGAINST USING IS VIOLATED—AIDING AND ABETTING.

Where a common carrier issued an interstate free pass to one of its employés, and said employé delivers said interstate free pass to a person not authorized by the statute to receive or use said pass, and the said party does use the same on an interstate journey, he violates Act June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1907, p. 892]; and the employé delivering to said person such pass is guilty of aiding and abetting in said violation.

(Syllabus by the Court.)

On Motion to Strike Information.

O. D. Street, U. S. Atty.

H. L. Black and D. D. Trimble, for defendant.

HUNDLEY, District Judge. The defendant is charged, on an information filed by the United States attorney, with aiding and abetting one Dan Pounds unlawfully to use and travel on an interstate free pass over and upon the St. Louis & San Francisco Railroad, a corporation, between Memphis, in the state of Tennessee, and Birmingham, in the state of Alabama. Counsel for defendant moves that the information be stricken from the files of this court, and that the defendant be released, on the grounds that the information charges no offense against the laws of the United States. There are other grounds stated in the motion, but this one ground is sufficient to raise any and all questions presented. The constitutionality of the act is not drawn in question by this motion.

The facts as stated in the information as describing the offense are that the defendant, Tom Williams, who was an employé of the said railroad company and entitled to receive a pass from said company as such employé, did receive the same, which he delivered to the said Dan Pounds, who was not entitled under the law to use or receive the said pass, but who did use the same by traveling thereon over the said railroad between Memphis, in the state of Tennessee, and Birmingham, in the state of Alabama, and that this act of Dan Pounds was in violation of section 1 of an act to regulate commerce, approved June 29, 1906 (34 Stat. 584, c. 3591 [U. S. Comp. St. Supp. 1907, p. 892]), prohibiting the use of free transportation by any one over common carriers except certain persons enumerated in the act, and that this defendant by his said acts aided and abetted said Pounds in the commission of the offense designated by the statute.

The first question presented is that the defendant, Tom Williams, being an employé of the said railroad company, and being for that reason exempt by the terms of the statute from punishment for using a free pass or transportation for passengers, is not liable to be proceeded against as set out in the information; that the pass was legally issued to him, and he could dispose of it as he pleased without violating the statute; in fine, that he does not fall within the purview of the statute. A person not falling within the class described in a penal statute may nevertheless, under the rules of the common law, be charged, provided (a) he was present, actually or constructively, and aided or abetted another person in the commission of the crime; (b) or, being absent, counseled or procured or caused that person to commit the crime; (c) or aided him after he had committed the offense, for example, to escape. If the crime is a misdemeanor, the aider or abettor in any one of the three cases above named would be a principal, and should be charged as such. If the crime is a felony, an aider or abettor would be a principal in the second degree, if he was actually or constructively present when another committed the offense, or he would be an accessory before the fact, or after the fact, according as the case fell within subdivisions "b" or "c" above.

U. S. v. Van Schaick (C. C.) 134 Fed. 592. The crime in this case being a misdemeanor, the defendant is therefore properly charged as a principal with the offense of aiding and abetting in the commission of the crime denominated in the statute.

It is contended, further, for the defendant, that, it being uncontroverted that the pass was legally issued to one entitled to receive it, it was no offense for another not entitled thereto to use it; in other words, that it is no offense for a person to use a pass issued to another, provided it was legally issued to that other person. That portion of the act referred to on which this prosecution is filed is as follows:

"No common carrier subject to the provisions of this act, shall after January first, nineteen hundred and seven, directly or indirectly, issue or give any interstate free ticket, free pass, or free transportation for passengers. except to its employees and their families, its officers, agents," etc. "Any common carrier violating this provision shall be deemed guilty of a misdemeanor and for each offense, on conviction, shall pay to the United States a penalty of not less than one hundred dollars nor more than two thousand dollars, and any person, other than the persons excepted in this provision. who uses any such interstate free ticket, free pass, or free transportation, shall be subject to a like penalty."

As I understand it, the argument on behalf of the motion to strike is this: The act prohibits the issuance of interstate free tickets or free transportation for passengers to any but employés, etc., and makes it an offense for the carrier to issue passes to a person not entitled thereto, and provides, further, that "any person, other than the persons excepted in this provision, who uses any such interstate free ticket, free pass, or free transportation, shall be subject to a like penalty"; and it is further argued that the word "such" in this provision relates to a pass that may have been illegally issued, and since the pass upon which Dan Pounds traveled was legally issued to the defendant, and only used by Pounds, no offense under the statute was committed. The question at issue then resolves itself into the following proposition: If Pounds was guilty of a violation of the statute by using the pass delivered to him by the defendant, Williams, for transportation between Memphis and Birmingham, then Williams would be guilty of aiding and abetting Pounds in the commission of the offense. If, on the other hand, Pounds did not violate the law in the use of the pass, then it follows, of course, that Williams cannot be convicted of aiding and abetting Pounds in the commission of any offense. To decide this question it becomes necessary to construe the statute in question. Act June 29, 1906, c. 3591, 34 Stat. 584. This statute has not been construed, so far, by any court.

It is contended by counsel for the defendant that it is a well-settled rule of law that penal statutes are to be construed strictly, and, so construing the act in question, there is no offense alleged in the information. Numerous authorities are cited to sustain this contention. I do not question the correctness of this proposition as a general rule; but it is, however, the object of the construction of penal as well as all other statutes to ascertain the true legislative intent; and while the courts will not, on the one hand, apply such statutes to cases which are not within the obvious meaning of the language employed by

the legislative body, even though they be within the mischief intended to be remedied, they will not, on the other hand, apply the rule of strict construction with such technicality as to defeat the purpose of ascertaining the true meaning and intent of the statute. 26 A. & E. Encyc. of L. (2d Ed.) 659. The intention of the legislative body must govern in the construction of penal as well as other statutes, and they are not to be construed so strictly as to defeat the obvious legislative intent. United States v. Wiltberger, 5 Wheat. 76, 5 L. Ed. 37; United States v. Morris, 14 Pet. 464, 10 L. Ed. 543; Am. Fur Co. v. United States, 2 Pet. 358, 367, 7 L. Ed. 450; United States v. Lacher, 134 U. S. 624, 10 Sup. Ct. 625, 33 L. Ed. 1080. The intention of the legislative body constitutes the law, and may be as effectually manifested by what is necessarily implied as by what is expressed. Telegraph Company v. Eyser, 19 Wall. 419, 427, 22 L. Ed. 13; Ex parte Yarborough, 110 U. S. 651, 658, 4 Sup. Ct. 152, 28 L. Ed. 274; McHenry v. Alford, 168 U. S. 651, 672, 18 Sup. Ct. 242, 42 L. Ed. 614; Great Northern Ry. Co. v. United States (C. C. A.) 155 Fed. 945.

After a full consideration of these authorities, I am of the opinion that while it is true that, before a case can be held to fall within a penal statute, the case must come within the letter and spirit of the statute, yet if it comes within the spirit, and also within one reasonable interpretation of the letter, of the statute, it is sufficient, although there may be a literal construction that might be put upon the statute which would not include the case. It is a well-settled rule that courts should so construe statutes "as to meet the mischief and advance the remedy." What was the mischief to be met by this enactment? What is the spirit and intention of the statute, and what is one reasonable interpretation of the letter of the statute? It will not be denied, I take it, that the mischief sought to be remedied by the statute is the indiscriminate use of free passes or free transportation for passengers over common carriers. I take it, also, that it will not be denied that the spirit and intention of the statute is to punish those common carriers who grant free passes or free transportation for passengers over their lines in violation of the statute, and also to punish those who use any free passes or transportation, except those included within the exceptions provided by the statute.

It will be noted that the statute inhibits the issuing or giving "directly or indirectly" of any interstate free ticket, free pass, or free transportation for passengers, and the penalty applies with equal force to the doing of the act by indirection as it does to a direct violation. The statute also makes it a crime for any person, other than the persons excepted by the statute, to use any such interstate free ticket, free pass, or free transportation as prescribed by the statute, and hence applies with the same force to any person who indirectly makes use of free transportation in violation of the statute. To say that the inhibition of the statute applies only to a free pass or transportation that has been illegally issued is manifestly too narrow and technical, and not even in accord with the rules of good grammar. "Such," as here used, means free "transportation for passengers,"

as·well as a free pass, and is not necessarily limited to an illegally issued free pass. The statute necessarily means, and in fact states, by any reasonable construction, that all persons who make use of any interstate free ticket, free pass, or free transportation in common carriers, either "directly or indirectly," shall be liable to the penalty prescribed by the statute, unless they are excepted by the terms thereof. The evident intention of the statute is to prevent common carriers from transporting certain passengers over their lines from one state to another without the payment of the usual fare, and also to prevent persons traveling on said common carriers from one state to another without paying the usual fare. To give this statute the construction contended for by counsel for the defendant would practically be, to all intents and purposes, to nullify the force and effect thereof. If a pass or free ticket may be used ad libitum by any one, into whose hands it may be placed, provided it was originally issued to a person authorized to receive the same, this would open the door to an endless violation of the very spirit and letter of the statute. Persons desiring to be transported by common carriers free of charge would have only to secure the intermediary of an employé thereof, to whom a pass could be issued, and then have this employé turn it over to them. I cannot assent to such an unreasonable construction of this statute.

I am of the opinion, therefore, that when the party, Pounds, used the pass and traveled over the St. Louis & San Francisco Railroad from Birmingham, Ala., to Memphis, Tenn., for which he had not made legal payment, not being exempt from the operation of the law by being among the number included therein, he violated the statute, and therefore the defendant, Williams, if the facts stated in the information are proven to be true, would be guilty of aiding and abetting the said Pounds in a violation of the law.

The motion to strike from the files of this court the information filed in this cause is therefore overruled. It is so ordered.

NOTE.—After this ruling by the court, the defendant entered a plea of guilty.