Mr. Justice Wayne
 

 delivered the opinion of the court.
 

 From the foregoing statement of all the acts of Congress having any bearing on the subject before us, we think it obvious it was not intended to subject lead-mine lands in the districts made by the act of the ,26th June, 1834, to -sale as other public lands are sold, or to make them liable to a pre-emption by settlers.
 

 
 *130
 
 The argument in support of a contrary conclusion is, that the reservations'in the fourth section' of that act, with the authority given to the President to sell all the' lands in the districts, any law of Congress heretofore existing to the contrary, notwithstanding, exclude lead-mine tracts in those districts from the operation of the act of the 3d of March, 1807. At most, the language of the fourth section of the act of 1834 imparts only an authority to the President to sell, given in the same way as it has been conferred upon him in other acts providing for the sale of the public lands. Then the question occurs, whether the section of an act, in general terms to sell, (certain reservations excepted,) without any reference to a previous act, which declares that lead mines in the Indiana Territory shall be reserved for the future disposal of the United States, is so far a repeal of the latter, that lead-mine lairds in apart of that territory are subjected to sale as other public lands are. Why should Congress, without certain words showing an intention to depart from the policy which had governed its legislation in respect to lead-mine lands in the whole of the Indiana Territory, from 1807 to 1834, be supposed to have meant to exempt a portion of the lead-mine lands in that territory from that policy, in art act,..the whole purview of which was to create additional land-sale districts? Besides, the reservations in the fourth section of the act of 1834, except the tract for the village of Galena, are no more than the reaffirmance of some of the provisions of other statutes respecting reservations made or to be made out of the public lands in other districts; and cannot, therefore, be considered as an enumeration in connection with the general power to sell all lands, any law of Congress heretofore existing to the. contrary notwithstanding, repealing another act, providing for a reservation of a particular class of lands within the same land-district to which the act of 1834 applies. . Th e reservations in the fourth section of the act of 1834 are limitations upon the authority to sell,) and not an enlargement of the general power of the President to sell lands, which, by law, he never had a power to sell; which have always been prohibited by law from being sold, and which never have been sold, except under the authority of a special statute, such.as that of the 3d March, 1829, 1 Land Laws, 457, .which authorized the President to cause the reserved lead mines in the state of Missouri to be sold. In 'looking at-that act, no one can fail to observe the care taken by the government to preserve its property m the lead-mine lands, or to come to the conclusion that the reservations of them can only be released by special legislation upon the subject-matter of such reservations. Authority, then, to sell all lands in the districts made by the act of 1834, though coupled with the concluding words of the fourth section, can only mean all lands not prohibited by law from being sold, or which have been reserved from sale, by force of law. The propriety of this interpretation of that section is more manifest, when it is considered, if a contrary inter
 
 *131
 
 pretation is given, that' the lead-mine lands in one district of the same territory would be liable to sale and pre-emption, and those in another párt of it-would not be. Can any one possible reason be suggested to sustain even the slightest intention upon the part of Congress, when it was passing the act of 1834, to make such differences in respect to lands within the same locality, as have just been mentioned ? Could 'Congress have meant to say, under a power to sell, that it would be lawful to sell in the new land district what it was unlawful to sell in other land districts of the same territory of which .the new land district was also a part ? And that settlers upon the public lands within the new district should havé^a right of pre-emption in lead-mine tracts, which settlers upon other lands within the same territory, but not within the new land district, could not have ? The mere fact of a new land district having been made out of a part of the territory in which the lead-mine lands had been reserved, with the authority to the President to sell all lands in the new district, can have no effect to lessen the force of the original reservation. In truth, the acts of 1834 and 1807 do not present a case of conflict in the sepse in which statutes do, when, from some expression in a later act, it may seem that something was intended to be excepted from the force of the former, or to operate as a partial repeal of it. The rule is, that a perpetual statute, (which all statutes are unless limited to a particular time,) until repealed by an act professing to repeal it, or by a clause or section of another act directly bearing in terms upon the particular matter of the first act, notwithstanding an implication to the contrary may be raised by a general law which embraces the subject-matter, is considered still to be th°e law in force as to the particulars of the subject-matter legislated upon. Thus in this case, all lands within the district mean-lands in which there are, and in which there are not, minerals or lead mines; but a power to-sell all lands, given in a law subsequent to another law expressly reserving lead-mine lands from sale, cannot be said to be a power to sell the reserved lands when they are not named, or to repeal the reservation. In this case there are two acts before us, in no way connected, except in both being parts of the public land system. Both can be acted upon without any interference of the provisions of the last 'with those of the first — each per- • forming its distinct'functions within the sphere as Congress designed they should do. But further, that the act of 1834 was not intended as a repeal of the act of 1807, in regard to lead mines, so as to grant a right of pre-emption in them to settlers, is manifest from the fact that an act was passed only seven days before it, reviving an act to grant pre-emption rights to settlers on the public lands, which excludes settlers from- the right of pre-emption in any land reserved from sale .by act of Congress. Thus reasserting, then, what had-been uniformly a part of every pre-emption law before, and what has been a limitation upon the right Of pre-emption in every act for
 
 *132
 
 that purpose since. We do not think it necessary to pursue the subject farther, except to say that the view we have here taken of the act of 1834, in respect to lands containing lead mines, and the right of pre-emption in them, is coincident with the opinion given by this' court in-the case of Wilcox
 
 v.
 
 Jackson, 13 Peters, 513. That case was well and most carefully considered, and expressed, in the deliberate language of this court. We.determined, then, the point being directly in the cause, that the act of 1834 had relation to a sale of lands in the manner prescribed by law^ at public auction, and that a right of pre-emption was governed by other laws. The court said, “ the very act of 19th June, 1834, under which this claim is made, was passed but one week before the one of which we are now speaking, (meaning the act of 26th June, 1834.,) thus showing that the provisions of the.one were not intended to. have any effect upon the subject-matter on which the other operated.” We see no reason to change what was then the view of the court. On the' contrary, there is much in this case to confirm it. Let it' be certified, therefore, to the judges of the Circuit Court of the United States for the district of Illinois, that this court is of the opinion that the act’of Congress, entitled “An act to create additional land-districts in the states of Illinois and Missouri, and. in the territory north of-the state of Illinois,” approved June 26^ 1834,
 
 does not require
 
 the President of the United States to cause to be' offered for sale the public lands
 
 containing lead mines
 
 situated in tbe land districts created by'said act.
 
 2d.
 
 That the said act does not require.>the President to cause said lands, containing lead mines, to be sold, because the 5th section of the act of tile 3d March, 1807, entitled""^ An'act making provision for the disposal of the public lands, situated between the United States military tract and the Connecticut reserve, and for other purr poses,” is still in full force.
 

 •
 

 • To the third question We reply, that the lands containing lead mines in the Indiana Territory, or in- that part of it made into new land-districts by the act of the 26th June, 1834, are not subject, under any of the pre-emption- laws which have been passed by Congress, to a pre-emption by settlers upon the public lands.
 

 To the 4th question, we reply that the 4th section of the act of 1834*”does in no way repeal any part of the 5th section of the act of the 3d of March, 1807, by which the lands containing lead mines' were reserved for the future disposal of the United States, by which
 
 grants
 
 for lead-mine tracts, discovered to be such before they maybe bought from the United States, are declared to be fraudulent and null, and which authorized the President to lease any lead mine which had been, or might be, discovered in the Indiana Territory, for a term' not exceeding five ytears.
 

 To the 5th question we reply, that-the land containing lead mines in the districts made by the act of 1834, are not subject to pre-emp? 'tion and sale under any of the existing laws of Congress.
 

 
 *133
 
 The foregoing answers apply also to the points upon whipfa. the judges were divided in opinion upon the bill in- chancery, betwéeh .the United States and the defendant Gear, except the fourth question.■ certified in that case; and to that we reply; that digging lead ore from the lead mines upon the public lands in the United States, is such a waste as entitles the United .States to a writ of injunction,to restrain it.
 

 [For the dissenting opinion of Mr. Justice McLean, see App. p.789.]