GREAT NORTHERN RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. September 23, 1907.)

No. 2,603.

**1. STATUTES—GENERAL REPEALING CLAUSE.**

A clause generally repealing "all laws and parts of laws in conflict with" the act of which it is part repeals nothing that would not be equally repealed without it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 225.]

**2. SAME—LATER ACT COVERING WHOLE SUBJECT OF PRIOR ONE.**

The rule that a later act, covering the whole subject of a prior one and embracing new provisions, plainly showing that it was intended as a substitute, operates by implication to repeal the prior act, is subject to the qualification that where the later act expresses the extent to which it is intended to repeal prior laws, as by a clause repealing all laws and parts of laws in conflict therewith, it excludes any implication of a more extended repeal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 229.

Repeal of statutes by implication, see note to First Nat. Bank of Butte v. Weidenbeck, 38 C. C. A. 136.]

**3. SAME—RE-ENACTMENT WITH AMENDMENTS.**

Statute law is not abrogated or annulled by mere re-enactment or repetition; and when, for purposes of enlargement, contraction, or otherwise, a statute is re-enacted or repeated with amendments, the amendatory act is to be regarded as an affirmation and continuation of the prior law, in so far as in substance and operation it is the same, and is to be regarded as new legislation only in so far as in substance or operation it differs from the prior law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 241.]

**4. CARRIERS—REBATES—SECTION 1 OF ELKINS ACT (32 STAT. 847) NOT WHOLLY REPEALED BY HEPBURN ACT (34 STAT. 584).**

In so far as section 1 of the Elkins act (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599]), provided for the punishment of acts of corporate carriers in knowingly offering, granting, or giving, as also the acts of corporate shippers in knowingly soliciting, accepting, or receiving, rebates, concessions, or discriminations from the legal rates and tariffs, it was not abrogated or repealed by the Hepburn act (Act June 29, 1906, c. 3591, 34 Stat. 584), but was preserved and continued; and in so far as it provided for the punishment of such acts, when not knowingly done—assuming, but without deciding, that it did so provide—it was repealed.

**5. STATUTES—CONGRESS CANNOT LIMIT MANNER IN WHICH ITS WILL SHALL BE MANIFESTED IN THE FUTURE.**

While Congress may prescribe rules affecting the construction of after-legislation, which does not in terms, or by necessary implication, show that it is to be unaffected by them, these rules cannot be so framed as to defeat the plain intention of after-legislation, and, like other statutes, they cease to be effective when plainly or necessarily in conflict with a later manifestation of the legislative will.

**6. SAME—REV. ST. § 13, CONSTRUED.**

As applied to subsequent repealing acts which do not expressly, or by necessary implication, contravene its provisions, Rev. St. § 13 [U. S. Comp. St. 1901, p. 6], prescribing the effect of a repealing act upon existing penalties, forfeitures, and liabilities, is effective and obligatory upon the courts; but beyond this it is without effect and not obligatory upon any one. Notwithstanding its enactment, Congress remained at liberty to legislate respecting its subject-matter in any manner they might choose.

**7. SAME—INTENTION IS CONTROLLING, THOUGH RESTING ONLY IN NECESSARY IMPLICATION.**

The intention of the Legislature constitutes the law, and may be as effectually manifested by what is necessarily implied as by what is expressed; and, where there are conflicting manifestations of the legislative will, the last is controlling, even though it rests in necessary implication.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 264.]

**8. SAME—REPEAL BY IMPLICATION.**

To establish a supersession or repeal of a statute by implication, it is not sufficient to show merely that a later statute, making no mention of the particular subject of a prior one, employs language broad enough to cover some part or all of it; for, as words are sometimes employed with less than their largest literal meaning, it must also appear that the two statutes cannot stand together, reasonable purpose and operation being accorded to each. Particularly is this true if the prior statute expresses a settled policy in legislation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 230.]

**9. CARRIERS—REBATES—DISCRIMINATION—REV. ST. § 13, NOT SUPERSEDED BY SPECIAL SAVING CLAUSE IN HEPBURN ACT (34 STAT. 584).**

The special saving clause in section 10 of the Hepburn act (Act June 29, 1906, c. 3591, 34 Stat. 595), does not mention the particular subject of the general saving clause in Rev. St. § 13 [U. S. Comp. St. 1901, p. 6], namely, the effect upon existing penalties, forfeitures, and liabilities of a repealing act, and can be accorded reasonable operation, consistently with the true intendment of its language and with the undisturbed operation of the general saving clause, by treating it as saving causes then pending in the courts of the United States from what, in its absence, and in the presence of the general saving clause, would be the effect upon them of the amendments provided for in that act. Consequently it does not by necessary implication supersede the general saving clause or impinge upon its field of operation.

(Syllabus by the Court.)

In Error to the District Court of the United States for the District of Minnesota.

William R. Begg and Rome G. Brown (Charles S. Albert, on the brief), for plaintiff in error.

Charles C. Houpt, U. S. Atty. (Paul A. Ewart, Asst. U. S. Atty., on the brief), for defendant in error.

Thomas Wilson, H. S. Priest, and F. W. Lehmann, amici curiæ.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

VAN DEVANTER, Circuit Judge. This writ of error challenges a judgment of conviction in a criminal case whereby the Great Northern Railway Company, a Minnesota corporation engaged as a common carrier in the transportation of property wholly by railroad from points in Minnesota to points in the state of Washington, was sentenced to pay a fine of $1,000 for each of 15 violations of section 1 of the act of February 19, 1903 (32 Stat. 847, c. 708 [U. S. Comp. St. Supp. 1905, p. 599]), known as the "Elkins Act," which declared, inter alia:

"And it shall be unlawful for any person, persons, or corporation to offer, grant, or give or to solicit, accept, or receive any rebate, concession, or discrimination in respect of the transportation of any property in interstate or foreign commerce by any common carrier subject to said act to regulate com-

merce and the acts amendatory thereto whereby any such property shall by any device whatever be transported at a less rate than that named in the tariffs published and filed by such carrier, as is required by said act to regulate commerce and the acts amendatory thereto, or whereby any other advantage is given or discrimination is practiced. Every person or corporation who shall offer, grant, or give or solicit, accept or receive any such rebates, concession, or discrimination shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not less than one thousand dollars nor more than twenty thousand dollars."

These violations were charged in an indictment returned November 8, 1906, and, as was alleged therein and admitted upon the trial, were committed in the months of May, June, July, and August, 1905, and consisted in granting and giving to the W. P. Devereux Company, a shipper of oats and corn in car load shipments from Minneapolis, Minn., to points in the state of Washington, over the defendant's railroad, concessions of 15, 18, and 20 cents per 100 pounds from the legal rate of 50 cents per 100 pounds named in the tariffs applicable to such shipments, as published and filed with the Interstate Commerce Commission by the defendant. Intermediate the commission of the offense and the returning of the indictment, Congress passed Act June 29, 1906, c. 3591, 34 Stat. pp. 584, 838, known as the "Hepburn Act," and the chief objection interposed by the defendant to its prosecution and punishment was that section 1 of the Elkins act, against which it had offended, was repealed by the Hepburn act in a manner which left no provision of law for the prosecution and punishment of offenses against the repealed statute, save where prosecutions therefor were pending in the courts of the United States at the time of the repeal. The district court overruled the objection (151 Fed. 84), and it is now very earnestly and forcefully pressed upon our consideration.

Does the Hepburn act repeal the whole or any part of section 1 of the Elkins act?

The title of the Hepburn act, "An act to amend an act entitled 'An act to regulate commerce,' approved February fourth, eighteen hundred and eighty-seven, and all acts amendatory thereof, and to enlarge the powers of the Interstate Commerce Commission," is so general that it gives no support to the claim of a repeal. Nor does that claim have any support in the general repealing clause in section 10, "All laws and parts of laws in conflict with the provisions of this act are hereby repealed," for it repeals nothing which would not be repealed equally without it. State v. Drexel (Neb.) 105 N. W. 174; State v. Yardley, 95 Tenn. 546, 558, 32 S. W. 481, 34 L. R. A. 656; Struthers v. People, 116 Ill. App. 481; Pierce v. Commercial Investment Co., 30 Wash. 272, 70 Pac. 496; District of Columbia v. Sisters of Visitation. 15 App. D. C. 300, 308. As said by Sutherland, Stat. Con. (2d Ed.) § 247:

"Subsequent legislation repeals previous inconsistent legislation, whether it expressly declares such repeal or not. In the nature of things it would be so, not only on the theory of intention, but because contradictions cannot stand together."

If there be a repeal, it is solely because section 2 of the Hepburn act declares that section 1 of the Elkins act "be amended so as to read as follows," and then reproduces it with some omissions and additions,

which is the same thing, in legal effect, as saying that the section is amended by striking out what is omitted and by inserting at designated places what is added. In the absence of a constitutional restriction—and there is none in the Constitution of the United States—the amendment of existing statutes may be effectually accomplished in either of these ways, and they have been employed interchangeably by Congress.

Generally speaking, where a statute is amended "so as to read as follows," or is re-enacted with changes, or is in terms repealed and simultaneously re-enacted with changes, the amendatory or re-enacting act becomes a substitute for the original, which then ceases to have the force and effect of an independent enactment; but this does not mean that the original is abrogated for all purposes, or that everything in the later statute is to be regarded as if first enacted therein. On the contrary, the better and prevailing rule is that so much of the original as is repeated in the later statute without substantial change is affirmed and continued in force without interruption, that so much as is omitted is repealed, and that any substantial change in other portions, as also any matter which is entirely new, is operative as new legislation. In Sutherland on Statutory Construction (2d Ed.) § 237, it is said of an amendment "so as to read as follows":

"The amendment operates to repeal all of the section amended not embraced in the amended form. The portions of the amended section which are merely copied without change are not to be considered as repealed and again enacted, but to have been the law all along; and the new parts or the changed portions are not to be taken to have been the law at any time prior to the passage of the amended act. The change takes effect prospectively according to the general rule."

And in the succeeding section it is said of a simultaneous repeal and re-enactment:

"Where there is an express repeal of an existing statute, and a re-enactment of it at the same time, or a repeal and a re-enactment of a portion of it, the re-enactment neutralizes the repeal so far as the old law is continued in force. It operates without interruption where the re-enactment takes effect at the same time. The intention manifested is the same as in an amendment enacted in the form noticed in the preceding section. Offices are not lost, corporate existence is not ended, inchoate statutory rights are not defeated, a statutory power is not taken away, nor pending proceedings or criminal charges affected by such repeal and re-enactment of the law on which they respectively depend."

The subject has been considered several times by the Supreme Court, and always with the same result. Steamship v. Joliffe, 2 Wall. 450, 458, 17 L. Ed. 805, involved the right of a port pilot to collect half pilotage fees for services proffered and declined, and during the pendency of the action the statute giving the right was in terms repealed and at the same time substantially re-enacted; the new act allowing half pilotage fees in the same circumstances as the original. The court held that the new act did not impair the right to fees which had arisen under the original, saying:

"The new act took effect simultaneously with the repeal of the first act. Its provisions may, therefore, more properly be said to be substituted in the place of, and to continue in force with modifications, the provisions of the original act, rather than to have abrogated and annulled them."

Murdock v. Memphis, 20 Wall. 590, 617, 22 L. Ed. 429, to which we will refer again, related to a revisory and substituted act, which, it was said, was a new law in so far as it differed from the original, and in so far as it embraced portions of the original was a preservation of them. Bear Lake Irrigation Co. v. Garland, 164 U. S. 1, 11, 17 Sup. Ct. 7, 9, 41 L. Ed. 327, related to an act which expressly repealed and at the same time substantially re-enacted a prior one, and of this it was said:

"Upon comparing the two acts of 1888 and 1890 together, it is seen that they both legislate upon the same subject, and in many cases the provisions of the two statutes are similar and almost identical. Although there is a formal repeal of the old by the new statute, still there never has been a moment of time since the passage of the act of 1888 when these similar provisions have not been in force. Notwithstanding, therefore, this formal repeal, it is, as we think, entirely correct to say that the new act should be construed as a continuation of the old with the modification contained in the new act. This is the same principle that is recognized and asserted in Steamship Co. v. Joliffe."

Holden v. Minnesota, 137 U. S. 483, 490, 494, 11 Sup. Ct. 143, 146, 147, 34 L. Ed. 734, was a criminal case involving the infliction of the death penalty. After the commission of the offense and before the indictment of the offender a statute was adopted which substantially re-enacted or repeated the provisions of the previous law relating to the mode of inflicting that penalty and to the issuing of the governor's warrant therefor. It also contained new provisions imposing solitary confinement after the issuance of the warrant and regulating the details of the execution, and in terms repealed all acts and parts of acts inconsistent with it. Responding to the contention that the previous law was thereby repealed, and that the new act could not be applied to prior offenses, the court, in addition to holding that the new provision for solitary confinement, although not in terms so written, was applicable only to future offenses, held that the previous law was not repealed, and in that connection said:

"These provisions were not repealed by the act of April 24, 1889 (Gen. Laws Minn. 1889, p. 66, c. 20). In respect to the first and second sections of that act, it is clear that they contain nothing of substance that was not in sections 11 and 12 of chapter 118 of the General Statutes of 1878. And it is equally clear that the provisions of an existing statute cannot be regarded as inconsistent with a subsequent act merely because the latter re-enacts or repeats those provisions. As the act of 1889 repealed only such previous acts and parts of acts as were inconsistent with its provisions, it is inaccurate to say that that statute contained no saving clause whatever. By necessary implication, previous statutes that were consistent with its provisions were unaffected."

And again:

"The provisions of the previous law, as to the nature of the sentence, the particular mode of inflicting death, and the issuing by the Governor of the warrant of execution before the convict was hung, were, therefore, not repealed, although some of them were re-enacted or repeated in the statute of 1889, and other provisions relating merely to the time and mode of executing the warrant, but not affecting the substantial rights of the convict, were added."

The rule announced in these cases was again recognized by the Supreme Court in Campbell v. California, 200 U. S. 87, 92, 26 Sup. Ct. 182, 50 L. Ed. 382, and was recently applied by us in Lamb v. Pow-

der River Live Stock Co., 65 C. C. A. 570, 132 Fed. 434, 67 L. R. A. 558. It has also been quite generally recognized and applied in the state courts. Instances of its application to civil statutes are shown in the following cases: Wright v. Oakley, 5 Metc. (Mass.) 400, 406; United Hebrew Benevolent Ass'n v. Benshimol, 130 Mass. 325; St. Louis v. Alexander, 23 Mo. 483, 509; Ely v. Holton, 15 N. Y. 595; Anding v. Levy, 57 Miss. 51, 59, 34 Am. Rep. 435; Fullerton v. Spring, 3 Wis. 667, 671; Glentz v. State, 38 Wis. 549; Burwell v. Tullis, 12 Minn. 572, 575 (Gil. 486); Gaston v. Merriam, 33 Minn. 271, 283, 22 N. W. 614; State ex rel. v. Baldwin, 45 Conn. 134, 144; People v. Board of Equalization, 20 Colo. 220, 231, 37 Pac. 964; Moore v. Kenockee Tp., 75 Mich. 332, 42 N. W. 944, 4 L. R. A. 555; Capron v. Strout, 11 Nev. 304, 310; McMullen v. Guest, 6 Tex. 275. And instances of its application to criminal statutes are shown in the following: Commonwealth v. Herrick, 6 Cush. (Mass.) 465; State v. Gumber, 37 Wis. 298; State v. Wish, 15 Neb. 448, 19 N. W. 686; State v. Miller, 58 Ind. 399; Sage v. State, 127 Ind. 15, 26 N. E. 667; State v. Kates, 149 Ind. 46, 48 N. E. 365; State v. Herzog, 25 Minn. 490; State v. Prouty, 115 Iowa, 657, 662–665, 84 N. W. 670; State v. Williams, 117 N. C. 753, 23 S. E. 250; State v. Brewer, 22 La. Ann. 273; Territory v. Ruval (Ariz.) 84 Pac. 1096; Junction City v. Webb, 44 Kan. 71, 23 Pac. 1073. See, also, Bishop Stat. Cr. (3d Ed.) §§ 152a, 181.

Reference to the point in judgment in some of these cases will illustrate the extent of the rule which they recognize and apply. Commonwealth v. Herrick was a prosecution for the sale of spirituous liquor by retail, in violation of a statute which was amended, after the date of the offense, by striking out the word "spirituous" and inserting "intoxicating" in its stead. It was held, Chief Justice Shaw delivering the opinion, that, as the substituted word included all that was covered by the other, and more, the intent manifestly was, not to affect cases theretofore within the statute, but to bring another class within its operation, and that as to the latter it was a new law, but as to the former its continuity was not broken. State v. Gumber was a prosecution under a statute declaring that all "places of public resort, where intoxicating liquors are sold in violation of law, shall be shut up and abated as public nuisances upon conviction of the keeper thereof, who shall be punished" by a fine and imprisonment. Pending the prosecution the statute was expressly repealed, and at the same time was re-enacted without any provision for a fine or imprisonment. The court, after referring to the rule that the effect of the repeal of a statute and its re-enactment at the same time is to continue it in uninterrupted operation, and after observing, "And we cannot perceive that it makes any difference whether the statute be a civil or a penal one, for it is wholly a question of legislative intent, which is as manifest and clear in the one case as the other," held that upon the defendant's conviction his saloon could be closed up and abated as a public nuisance and the costs of the prosecution imposed upon him, but that no fine or imprisonment could be imposed, because the provision for that part of the original punishment had not been re-enacted, and therefore was repealed. State v. Wish was a prosecution for horse stealing

under a statute which, after the date of the offense, was expressly re-pealed and at the same time re-enacted with such changes in its phrase-ology that the maximum imprisonment was reduced from 15 years to 10 and the minimum from 3 years to 1. After referring to the rule that upon the unconditional repeal of a criminal statute the power to punish violations thereof is taken away, the court said:

"But does this rule apply when in fact the statute has not been repealed? There would seem to be a material difference between repealing a statute and leaving nothing in its place, and simply repealing it so far as to avoid an ap-parent conflict between the original and amended sections of the act. In the one case the power would be entirely gone, while in the other no instant of time had passed between the repeal of the old and the taking effect of the new. The repealing act re-enacts the provisions of the old statute in its very language in all respects, except in reducing the imprisonment. We hold, therefore, that where the re-enactment is in the words of the old statute, and was evidently intended to continue in force the uninterrupted operation of such statute, the new act or amendment is a mere continuation of the former act, and is not in a proper sense a repeal."

State v. Miller was a prosecution for grand larceny; the property taken being a watch of the value of $23. Under section 19 of the act of 1852, in force at the date of the offense, grand larceny consisted in the stealing of personal goods of another of the value of $5 or up-wards, and pending the prosecution the statute was by an amendatory act repeated in its original terms, save that the element of value was changed from $5 or upwards to $15 or upwards. The court held that the original section was not wholly repealed, saying:

"The amended statute in question is not inconsistent with the statute as it was before amendment, so far as it is applicable to the case under considera-tion. The only change made by the amendment was to fix the amount con-stituting grand larceny at $15, instead of $5. The law under both statutes made the stealing of $20 and upwards grand larceny. There has not been a moment, since the coming into force of the act of 1852, that the statute law of this state has not made the stealing of the amount charged in the indict-ment in this case grand larceny, and contained the same provisions as to the punishment thereof. It is clear to us that the lawmaking power never intend-ed the repeal of the entire section 19, above mentioned, and that no rule of construction of statutes requires this court to hold that it is repealed."

In Sage v. State the accused was convicted as an accessory before the fact to the crime of murder in the first degree. At the date of the offense the statute read:

"Every person who shall aid or abet in the commission of any felony, or who shall counsel, encourage, hire, command, or otherwise procure such felony to be committed, shall be deemed an accessory before the fact, and may be tried and convicted in the same manner as if he were a principal, and either be-fore or after the principal offender is convicted, and charged or indicted, and upon such conviction shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

It was thereafter re-enacted in an amendatory act with such changes in its phraseology that, while the elements of the crime and the punish-ment remained the same, the name given to the offense in the original statute was omitted, and some changes were made in the matter of the procedure or remedy. In sustaining the conviction, it was held that, though in a sense such an amendatory act supersedes the act which it

amends, it does not completely repeal or destroy it for all purposes; and it was added:

"Principle forbids the conclusion that an amendatory statute, defining an offense in substantially the same language as that employed in the statute it amends, takes away the right of the state to prosecute the offender and requires his unconditional discharge. It cannot be logically affirmed, where the same offense is defined in the same way by both the earlier and the later statute, that there is an interregnum in which there was no law defining the offense. The two acts interfuse and blend so fully and compactly that it is impossible that there can be an interval when there was no law. Between the two acts there is no period of intervening time in which no offense existed."

State v. Herzog was a prosecution under the following statute:

"If any officer, agent, clerk or servant of any incorporated company, or if any clerk, agent, or servant of any private person, or of any copartnership, except apprentices and other persons under the age of sixteen years, embezzles or fraudulently converts to his own use, or takes and secretes with intent to embezzle and convert to his own use, without consent of his employer or master, any money or property of another which has come to his possession or is under his care *by virtue of such employment*, he shall be deemed to have committed larceny."

After the date of the offense the statute was amended so as to read as follows:

"If any officer, agent, clerk or servant of any incorporated company, or if any clerk, agent or servant of any private person, or of any copartnership, except apprentices and other persons under the age of sixteen years, *or if any attorney at law, collector or other person who in any manner receives or collects money or any other property for the use of and belonging to another*, embezzles or fraudulently converts to his own use, or takes and secretes with intent to embezzle and convert to his own use, without the consent of his employer, master, *or the owner of the money or goods collected or received*, any money or property of another, *or which is partly the property of another and partly the property of such officer, agent, clerk, servant, attorney at law, collector, or other person*, which has come to his possession or under his care *in any manner whatsoever*, he shall be deemed to have committed larceny; *and in a prosecution for such crime, it shall be no defence that such officer, agent, clerk, servant, attorney at law or other person was entitled to a commission out of such money or property, as commission for collecting or receiving the same for and on behalf of the owner thereof: provided, that it shall be no embezzlement on the part of such agent, clerk, servant, attorney at law, collector, or other person to retain his reasonable collection fee on the collection.*"

For the purpose of showing in what respects the amended statute differed from the original, we have italicized those words of each not found in the other. In affirming the conviction of the accused, notwithstanding the changes in the law, it was pointed out that, save where the accused was entitled to a commission out of the money or property embezzled, etc., the amended statute covered in exactly the same way the offenses described in the original, and it was said that:

"With regard to the offenses described in the latter, in a case in which the defense spoken of does not exist, the law is wholly unaffected by the changes made by the former, and continues to be exactly what it was before the changes were made. As respects such offenses, the original section is not repealed, abrogated, changed, or amended, but simply preserved and continued; for there never has been a moment of time since its adoption when the rule of law announced by it did not exist. So long as this rule, which is ap-

plicable to a certain class of cases, remains unchanged, it is not at all important that the amendment effected by the amended section provides for and adds other classes of cases. The law as to the original offenses, save when the defense mentioned exists, is the same in every respect."

Territory v. Ruval was a prosecution for grand larceny under a statute which, after the date of the offense, was re-enacted in an amendatory act so as to enlarge the enumeration of property subject to that offense. The amendatory act also contained a clause in terms repealing all acts and parts of acts inconsistent with it. The property stolen, a gelding, was within the enumeration in both the original and the amendatory act, and the prosecution was sustained, because the original was neither inconsistent with nor repealed by the amendatory act, but was merely enlarged to include a class of cases not before within its operation.

In support of the contention that by its re-enactment, with modifications, section 1 of the Elkins act was entirely repealed, and hence no prosecution for prior violations of its inhibitions respecting rebates, concessions, and discriminations could be instituted thereafter "against either an individual or a corporation," counsel for the railway company rely upon such cases as Norris v. Crocker, 13 How. 429, 14 L. Ed. 210, United States v. Tynen, 11 Wall. 88, 20 L. Ed. 153, Murdock v. Memphis, 20 Wall. 590, 22 L. Ed. 429, United States v. Claflin, 97 U. S. 546, 24 L. Ed. 1082, 1085, Pana v. Bowler, 107 U. S. 529, 538, 2 Sup. Ct. 704, 27 L. Ed. 424, Tracy v. Tuffly, 134 U. S. 206, 229, 10 Sup. Ct. 527, 33 L. Ed. 879, and Murphy v. Utter, 186 U. S. 95, 22 Sup. Ct. 776, 46 L. Ed. 1070, from which they deduce the conclusion that where a later act covers the whole subject of a prior one, and embraces new provisions plainly showing that it was intended as a substitute, it operates by implication, and without any repealing clause, as an unqualified repeal of the whole of the prior act. In our opinion there are two insuperable objections to this position: First, the repealing clause in the Hepburn act, "All laws and parts of laws in conflict with the provisions of this act are hereby repealed," expresses the extent to which it was intended to repeal prior laws, and excludes any implication of a more extended repeal. Henderson's Tobacco, 11 Wall. 652, 656, 20 L. Ed. 235; Holden v. Minnesota, 137 U. S. 483, 491, 11 Sup. Ct. 143, 34 L. Ed. 734; Patterson v. Tatum, 18 Fed. Cas. No. 10,830; Gaston v. Merriam, 33 Minn. 271, 283, 22 N. W. 614; Lewis v. Stout, 22 Wis. 234; People v. Huntley, 112 Mich. 569, 578, 71 N. W. 178. And, next, the cases relied upon do not hold that a revisory or substituted act, which literally or substantially re-enacts or repeats portions of the original, is, in respect of them, new legislation, rather than an affirmation and continuation of existing law; nor is there any reason to believe that they restrain or qualify the ruling in Steamship Co. v. Joliffe, Bear Lake Irrigation Co. v. Garland, and Holden v. Minnesota, supra. What they do hold—general expressions being read in the light of the questions necessary to be determined—is that a later act covering the whole subject of a prior one, and embracing new provisions plainly showing that it was intended as a substitute, supersedes the prior act, in the sense of embracing all thereof that was intended to be preserved, omitting what was not so intended,

and changing what was intended to be changed, and so prevents the two from being regarded as in any respect coexistent or cumulative enactments. In this there is nothing at all inconsistent with what otherwise is clear; that is, that the intention in such a case is to make a new law only in so far as the substituted act differs from the original. And such is plainly the necessary conclusion from what was said in Murdock v. Memphis, 20 Wall. 590, 617, 22 L. Ed. 429, one of the cases relied upon. The question there presented was one of the effect upon the twenty-fifth section of the judiciary act of September 24, 1789 (1 Stat. 85, c. 20), produced by the second section of the amendatory act of February 5, 1867 (14 Stat. 386, c. 28), which re-enacted or repeated the former, with some changes and omissions, but contained no repealing clause. Of this it was said:

"A careful comparison of these two sections can leave no doubt that it was the intention of Congress, by the latter statute, to revise the entire matter to which they both had reference, to make such changes in the law as it stood as they thought best, and to substitute their will in that regard entirely for the old law upon the subject. We are of opinion that it was their intention to make a new law so far as the present law differed from the former, and that the new law, embracing all that was intended to be preserved of the old, omitting what was not so intended, became complete in itself, and repealed all other law on the subject embraced within it. The authorities on this subject are clear and uniform. The result of this reasoning is that the twenty-fifth section of the act of 1789 is technically repealed, and that the second section of the act of 1867 has taken its place. What of the statute of 1789 is embraced in that of 1867 is, of course, the law now, and has been ever since it was first made so. What is changed or modified is the law as thus changed or modified. That which is omitted ceased to have any effect from the day that the substituted statute was approved."

Norris v. Crocker turned entirely upon the question whether, in the absence of a repealing clause, an amendatory and supplementary act covering the whole subject of the original, adding new offenses and prescribing penalties, which were altogether new and more severe, for the offenses enumerated in the original, as well as for the new ones, repealed the original so far as related to the penalty. Of course, it was held that the provisions of the amendatory and supplementary act were repugnant to those of the original in respect of the penalty, and hence there was a repeal to that extent. United States v. Tynen was in principle much the same. An amendatory act, covering the whole subject of the original, and adding many new offenses, prescribed for each offense named therein as well those which were old as those which were new, a punishment which was different and more severe, in that its minimum was less, and its maximum greater, than that prescribed in the original. It was held that the two acts were repugnant in this respect, and that the amendatory one operated, without any repealing clause, to repeal the other. United States v. Claflin is so nearly like the two cases last mentioned that what has been said of them is also applicable to it. In each the amendatory act failed to re-enact or repeat enough of the original to cover the penalty or punishment for any prior offense, and so there was no occasion to consider or decide whether such portions of the original as were re-enacted or repeated should be regarded as new legislation or as an affirmation and continuance of the prior law. Pana v. Bowler and Tracy v. Tuffly decided

nothing having application here, other than that a later act, plainly intended to prescribe the only rules that are to govern in respect of the subject covered by a prior one, operates, without any repealing clause, to repeal any provision in that act omitted from the other. And Murphy v. Utter is also distinguishable from the cases which we regard as applicable and controlling, as well as from the one now before us. The situation presented in that case was, that a territorial legislature, whose acts were subject to approval, disapproval, or change by Congress, had attempted to repeal one of its prior acts, which in the meantime, had been re-enacted, with some changes, by Congress. No question was presented as to whether, as respected matters transpiring between the original enactment and the re-enactment, such provisions of the former as were repeated in the latter should be regarded as entirely new legislation or as speaking from the date of their original enactment, and the real controversy was as to whether the act of Congress, being paramount as well as later, superseded and took the place of the original territorial act in the sense of disenabling the territorial Legislature from subsequently repealing it. It was held that the original was thus superseded and supplanted, and that the office of loan commissioners, created by it and "continued by the act" of Congress, was not terminated by the subsequent territorial repealing act. When the entire opinion is carefully examined, it does not sustain the extensive repeal here claimed.

From this review of adjudged cases, as also from what is deemed the better reasoning, we think the conclusion necessarily follows that statute law is not abrogated or annulled by mere re-enactment or repetition, and that when, for purposes of enlargement, contraction, or otherwise, a statute is re-enacted or repeated with amendments, the amendatory act is to be regarded as an affirmation and continuation of the prior law, in so far as in substance and operation it is the same, and is to be regarded as new legislation only in so far as in substance or operation it differs from the prior law.

As much of section 1 of the Elkins act was re-enacted or repeated by the Hepburn act without any change in substance or operation, we hold that the section was not wholly repealed. And so it becomes necessary to consider whether there was any substantial change in that part of it upon which the prosecution and punishment of the offense here charged depend. For the purpose of illustrating such changes as were made the section is here reproduced, the omitted portions of the original being italicized, the new matter being shown in brackets, and the balance being common to both:

"That anything done or omitted to be done by a corporation common carrier, subject to the act to regulate commerce and the acts amendatory thereof, which, if done or omitted to be done by any director or officer thereof, or any receiver, trustee, lessee, agent, or person acting for or employed by such corporation, would constitute a misdemeanor under said acts or under this act, shall also be held to be a misdemeanor committed by such corporation, and upon conviction thereo. it shall be subject to like penalties as are prescribed in said acts or by this act with reference to such persons, except as such penalties are herein changed. The willful failure upon the part of any carrier subject to said acts to file and publish the tariffs or rates and charges as required by said acts, or strictly to observe such tariffs until changed according to law, shall be a misdemeanor, and upon conviction thereof the corpora-

tion offending shall be subject to a fine [of] not less than one thousand dollars nor more than twenty thousand dollars for each offense; and it shall be unlawful for any person, persons, or corporation to offer, grant, or give, or to solicit, accept, or receive any rebate, concession, or discrimination in respect to the transportation of any property in interstate or foreign commerce by any common carrier subject to said act to regulate commerce and the acts amendatory *thereto* [thereof] whereby any such property shall by any device whatever be transported at a less rate than that named in the tariffs published and filed by such carrier, as is required by said act to regulate commerce and the acts amendatory *thereto* [thereof], or whereby any other advantage is given or discrimination is practiced. Every person or corporation [whether carrier or shipper] who shall [knowingly] offer, grant, or give, or solicit, accept, or receive any such rebates, concession, or discrimination shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not less than one thousand dollars nor more than twenty thousand dollars. *In all convictions occurring after the passage of this act for offenses under said acts to regulate commerce, whether committed before or after the passage of this act, or for offenses under this section, no penalty shall be imposed on the convicted party, other than the fine prescribed by law, imprisonment, wherever now prescribed as part of the penalty being hereby abolished*: [*Provided*, that any person, or any officer or director of any corporation subject to the provisions of this act, or the act to regulate commerce and the acts amendatory thereof, or any receiver, trustee, lessee, agent, or person acting for or employed by any such corporation, who shall be convicted as aforesaid, shall, in addition to the fine herein provided for, be liable to imprisonment in the penitentiary for a term of not exceeding two years, or both such fine and imprisonment, in the discretion of the court.] Every violation of this section shall be prosecuted in any court of the United States having jurisdiction of crimes within the district in which such violation was committed, or through which the transportation may have been conducted; and whenever the offense is begun in one jurisdiction and completed in another it may be dealt with, inquired of, tried, determined, and punished in either jurisdiction in the same manner as if the offense had been actually and wholly committed therein.

"In construing and enforcing the provisions of this section, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier [or shipper] acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier [or shipper] as well as that of the person. Whenever any carrier files with the Interstate Commerce Commission or publishes a particular rate under the provisions of the act to regulate commerce or acts amendatory *thereto* [thereof], or participates in any rates so filed or published, that rate as against such carrier, its officers or agents, in any prosecution begun under this act shall be conclusively deemed to be the legal rate, and any departure from such rate, or any offer to depart therefrom, shall be deemed to be an offense under this section of this act.

"[Any person, corporation, or company who shall deliver property for interstate transportation to any common carrier, subject to the provisions of this act, or for whom as consignor or consignee, any such carrier shall transport property from one state, territory, or the District of Columbia to any other state, territory, or the District of Columbia, or foreign country, who shall knowingly by employé, agent, officer, or otherwise, directly or indirectly, by or through any means or device whatsoever, receive or accept from such common carrier any sum of money or any other valuable consideration as a rebate or offset against the regular charges for transportation of such property, as fixed by the schedules of rates provided for in this act, shall in addition to any penalty provided by this act forfeit to the United States a sum of money three times the amount of money so received or accepted and three times the value of any other consideration so received or accepted, to be ascertained by the trial court; and the Attorney General of the United States is authorized and directed, whenever he has reasonable grounds to believe that any such person, corporation, or company has knowingly received or accepted from any such common carrier any sum of money or other valuable con-

sideration as a rebate or offset as aforesaid, to institute in any court of the United States of competent jurisdiction, a civil action to collect the said sum or sums so forfeited as aforesaid; and in the trial of said action all such rebates or other considerations so received or accepted for a period of six years prior to the commencement of the action, may be included therein, and the amount recovered shall be three times the total amount of money, or three times the total value of such consideration, so received or accepted, or both, as the case may be.]"

Having regard to so much of the section as defines, and prescribes the punishment for, the offense charged in the present indictment, it is seen that the literal changes therein are four in number: First, the insertion of the words "whether carrier or shipper" in the clause specifying those against whom it is directed; second, the insertion of the word "knowingly" in the clause specifying the acts made punishable; third, the omission of the provision that no punishment other than the prescribed fine shall be imposed; and, fourth, the addition, by way of a proviso, of a provision that, when the offender is a person, he shall be liable to imprisonment, or both fine and imprisonment, in the discretion of the court. The first change is an immaterial one, because the language "every corporation or person who shall offer, grant or give, or solicit, accept or receive, any such rebates, concession or discrimination," as certainly includes both carriers and shippers without the inserted words as with them. As to the second change, we shall assume, but without so deciding, that the contention of counsel for the railway company, acceded to by counsel for the government, that the original definition of the offense included acts not knowingly done, and that the insertion of the word "knowingly" contracts the definition and excludes therefrom acts originally included, is correct. If so, the prior law is repealed in so far as the definition is contracted, and prior offenses falling within the repeal cannot now be prosecuted and punished, save as there may be some general or special saving clause applicable to them. The third and fourth changes are also immaterial here, because the punishment prescribed for corporate offenders, which was only a fine, is not affected by either. And another reason why the third change is immaterial here is that the omitted provision had reference to offenses the original punishment for which, where the offender was a person, included imprisonment, which was not true of the offense charged in this indictment. As to it the only punishment prescribed was a fine, the provision for which is repeated literally. The fourth change is, of course, inapplicable to prior offenses, punishable only by fine at the time of their commission; but whether the provision for imprisonment which it introduces, by way of a proviso, is so far separable from, and independent of, what is re-enacted or repeated, as to have no effect upon the punishment, by fine, of such prior offenses, where committed by persons (see Holden v. Minnesota, 137 U. S. 483, 494, 11 Sup. Ct. 143, 34 L. Ed. 734), need not be considered now, because, however that may be, it does not affect the punishment of corporate offenders.

The situation, therefore, is this: Acts of corporate carriers in knowingly offering, granting, or giving, as also acts of corporate shippers in knowingly soliciting, accepting, or receiving, rebates, concessions, or discriminations, are within both the original and the amended defini-

·tion·of the offense, and the punishment therefor is unchanged. As to them the prior law is not abrogated or repealed, but preserved and continued; and the liability of the offender to prosecution and punishment, whether the offense was committed before or after the amendatory act, is unaffected. But in so far as the original section embraces such acts, when not knowingly done, it is undoubtedly repealed. It is at this point that a question lying within narrow compass, but of more difficulty, is encountered. The indictment, unlike that set forth in the opinion delivered in the District Court, does not, in charging the granting and giving of concessions to the W. P. Devereux Company, use the word "knowingly," or any other term of equivalent import, and so does not state a case falling within the contracted definition of the offense and without the repeal. True, upon the trial it was admitted on behalf of the railway company that these concessions were granted and given by its direction and with its consent; but as the sufficiency of the indictment was challenged by a demurrer and by a motion in arrest of judgment, and as the admission just stated was made under a stipulation that it should not prejudice the right of the railway company to question the sufficiency of the indictment, the correctness of the rulings upon the demurrer and the motion in arrest of judgment must be determined independently of what occurred upon the trial. It therefore becomes necessary to inquire whether there is any general or special saving clause applicable to prior offenses falling without the contracted definition of the offense and within the repeal. This is the more difficult question.

That section 13 of the Revised Statutes [U. S. Comp. St. 1901, p. 6] is such a general saving clause, if not superseded by something in the Hepburn act, is not only plain, but fully conceded. It reads:

"Sec. 13. The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

But it is urged on behalf of the railway company that this general saving clause is superseded, so far as concerns the Hepburn act, by section 10 of that act, which reads:

"Sec. 10. That all laws and parts of laws in conflict with the provisions of this act are hereby repealed, but the amendments herein provided for shall not affect causes now pending in courts of the United States, but such causes shall be prosecuted to a conclusion in the manner heretofore provided by law."

It will be observed that the earlier and general statute seems to declare that it shall apply to all cases of repeal, unless the repealing act "expressly" provides that it shall have the effect of releasing or extinguishing penalties for prior offenses, and also that the later and special statute does not contain any such express provision. Because of this it is insisted on behalf of the government that the later act does not come within the qualifying clause of the general statute, and·that it is not admissible to inquire whether the later·act by necessary implication manifests an intention·to release or extinguish penalties for prior offenses. Such would doubtless be the effect of the general statute, if

it were a constitutional provision; but, as it is not, the contention is made untenable by these well-settled propositions: First, Congress cannot thus limit or restrict the manner in which its power shall be exerted, or its intention manifested, in the future (Cooley's Const. Lim. [7th Ed.] 174; Bishop St. Cr. [3d Ed.] § 147; 2 Sutherland, St. Con. [2d Ed.] § 355; Bloomer v. Stolley, 3 Fed. Cas. 729, No. 1,559; Manigault v. Springs, 199 U. S. 473, 487, 26 Sup. Ct. 127, 50 L. Ed. 274; Kellogg v. Oshkosh, 14 Wis. 623, 628; Brightman v. Kirner, 22 Wis. 54, 60; Friend v. Levy [Ohio] 80 N. E. 1036; Wall v. State, 23 Ind. 150, 153; Davidson v. Witthaus, 106 App. Div. N. Y. 182, 185, 94 N. Y. Supp. 428; State v. County Court, 37 W. Va. 808, 811, 17 S. E. 379; Gilleland v. Schuyler, 9 Kan. 569, 580); second, the intention of the Legislature constitutes the law, and may be as effectually manifested by what is necessarily implied as by what is expressed (Telegraph Co. v. Eyser, 19 Wall. 419, 427, 22 L. Ed. 43; Ex parte Yarbrough, 110 U. S. 651, 658, 4 Sup. Ct. 152, 28 L. Ed. 274; McHenry v. Alford, 168 U. S. 651, 672, 18 Sup. Ct. 242, 42 L. Ed. 614); and, third, where there are conflicting manifestations of the legislative will, the last is controlling, even though it rests in necessary implication.

But it is said that, if the general statute be not effective as a limitation or restriction upon Congress, it is at least obligatory upon the courts as a rule of construction binding them to construe every subsequent repealing act, no matter what its necessary implication, as leaving penalties for prior offenses unaffected, unless it expressly provides that it shall have the effect of releasing or extinguishing them. This, however, is but saying that, though Congress is not bound by the general statute in the enactment of later repealing acts, the courts are bound to construe and give effect to them as if Congress were thus bound; in other words, that general statutory rules of construction may be so framed as to defeat the manifest intention of after legislation. We think that the statement of the proposition is its refutation. The intention of the Legislature, as before said, constitutes the law, and necessarily a later act, whatever its form, if only it be unaffected by any constitutional restriction and its meaning be plain, supersedes prior acts in conflict with it. Of course, the Legislature may prescribe rules affecting the construction of after-legislation, which does not, in terms or by necessary implication, show that it is to be unaffected by them; but they cannot be so framed as to defeat the plain intention of such legislation, and, like other statutes, they cease to be obligatory upon the courts when superseded by a later and conflicting manifestation of the legislative will. In short, our conclusion respecting the general statute is this: As applied to subsequent repealing acts, which do not, expressly or by necessary implication, contravene its provisions, it is effective and obligatory upon the courts, but beyond this it is without effect and not obligatory upon any one. Notwithstanding its enactment, Congress remained at liberty to legislate respecting its subject-matter in any manner they might choose. They could change or repeal it, or supersede it, in whole or in part, as to any particular repealing act. They could do any of these things expressly or by necessary implication; and any such change, repeal, or supersession, however made,

would be as obligatory upon the courts as would be the general statute, if it were unaffected by after legislation.

If, therefore, section 10 of the Hepburn act does not expressly or by necessary implication manifest an intention to release or extinguish penalties for prior offenses falling within the repeal, the general statute is very plainly applicable to their enforcement, and requires that the repealed law be treated as continuing in force for that purpose. United States v. Reisinger, 128 U. S. 398, 9 Sup. Ct. 398, 32 L. Ed. 480. Section 10 does not expressly mention penalties for prior offenses, or their remission or enforcement. Does it by necessary implication manifest an intention to release or extinguish them, or any of them? The argument advanced in support of an affirmative answer is this: That section contains both a repealing clause and a saving clause. Some purpose must be ascribed to the latter. It can have no other purpose than to prescribe the effect of the repealing portions of the act upon penalties for prior offenses. It declares that penalties for offenses for which prosecutions were then pending in the courts of the United States shall be saved; and by necessary implication, equally effectual, it declares that other penalties shall not be saved, but released or extinguished. If all of this were true of that section, doubtless the conclusion would follow that it impliedly supersedes or repeals, pro tanto, the general statute, which was presumptively in the mind of Congress. State v. Showers, 34 Kan. 269, 8 Pac. 474. The argument, however, treats section 10 as if it read literally or substantially as follows:

"All laws and parts of laws in conflict with the provisions of this act are hereby repealed, but such repeal shall not release or extinguish any penalty for any offense heretofore committed against such law for which a criminal prosecution is now pending in any court of the United States, and what is repealed shall be treated as still remaining in force for the purpose of sustaining any such pending prosecution for the enforcement of such a penalty."

In fact, it reads in this way:

"Sec. 10. That all laws and parts of laws in conflict with the provisions of this act are hereby repealed, but the amendments herein provided for shall not affect causes now pending in courts of the United States, but such causes shall be prosecuted to a conclusion in the manner heretofore provided by law."

Thus the special saving clause, although immediately following a repealing clause, does not in terms refer to a repeal, to penalties for prior offenses, to the remission or enforcement of any of them, or to pending causes for their enforcement, but to "the amendments herein provided for," to "causes now pending in courts of the United States," and to their continued prosecution "in the manner heretofore provided by law." Of course, "amendments" is broad enough to cover the partial repeal of section 1 of the Elkins act, for that was effected through an amendment; and what is said about "causes now pending in courts of the United States" and their continued prosecution is also broad enough to cover the enforcement of penalties for prior offenses embraced in criminal causes then pending in those courts. But does this language plainly or necessarily refer to the effect of the repeal upon the enforcement of penalties for prior offenses? We say plainly or necessarily, because, to establish a supersession or repeal of a statute

by implication, it is not sufficient to show merely that a later statute, making no mention of the particular subject of the first, employs language broad enough to cover some part or all of it; for, as words are sometimes employed with less than their largest literal meaning, it must also appear that the two statutes cannot stand together, reasonable purpose and operation being accorded to each. Particularly is this true if the first expresses a settled policy in legislation. Wood v. United States, 16 Pet. 342, 362, 10 L. Ed. 987; United States v. Gear, 3 How. 120, 131, 11 L. Ed. 523, 538; Frost v. Wenie, 157 U. S. 46, 58, 15 Sup. Ct. 532, 39 L. Ed. 614; United States v. Healey, 160 U. S. 136, 146, 16 Sup. Ct. 247, 40 L. Ed. 369; Rosecrans v. United States, 165 U. S. 257, 17 Sup. Ct. 302, 41 L. Ed. 708; United States v. Greathouse, 166 U. S. 601, 17 Sup. Ct. 701, 41 L. Ed. 1130; McChord v. Louisville & Nashville R. R. Co., 183 U. S. 483, 500, 22 Sup. Ct. 165, 46 L. Ed. 289. Or, as the same thing is at times differently expressed, a statute couched in clear and explicit terms is not overthrown by possible, but not necessary, implications flowing from after legislation. We shall refer briefly to two of the cases just cited, each dealing with a conflict literally more pronounced than that now before us.

United States v. Gear arose under the public land laws. The policy of Congress to reserve from disposition under other laws public lands containing lead mines had long been expressed in Act March 3, 1807, c. 49, § 5, 2 Stat. 449, when Act June 26, 1834, c. 76, § 4, 44 Stat. 687, establishing new land districts, directed the President to cause to be offered for sale "all the lands lying in said land districts." Thus there was presented the question whether or not the later act superseded the other, there being lands of both classes in those districts; and of this the court said:

"The rule is that a perpetual statute (which all statutes are unless limited to a particular time), until repealed by an act professing to repeal it, or by a clause or section of another act directly bearing in terms upon the particular matter of the first act, notwithstanding an implication to the contrary may be raised by a general law which embraces the subject-matter, is considered still to be the law in force as to the particulars of the subject-matter legislated upon. Thus, in this case, all lands within the district mean lands in which there are, and in which there are not, minerals or lead mines; but a power to sell all lands, given in a law subsequent to another law expressly reserving lead-mine lands from sale, cannot be said to be a power to sell the reserved lands when they are not named, or to repeal the reservation. In this case there are two acts before us, in no way connected, except in both being parts of the public land system. Both can be acted upon without any interference of the provisions of the last with those of the first; each performing its distinct functions within the sphere as Congress designed they should do."

United States v. Greathouse arose under the laws relating to the prosecution of claims against the United States. Section 1069 of the Revised Statutes [U. S. Comp. St. 1901, p. 740] provided that such claims should be barred unless the petition was filed within six years after the claim first accrued, but contained an excepting clause in favor of married women and others, including persons beyond the seas, who were permitted to sue within three years after the disability ceased. In 1887 Congress passed an act (Act March 3, 1887, c. 359, 24 Stat. 505 [U. S. Comp. S. 1901, p. 753]) relating to the prosecution of such

claims, which, in a proviso to its first section, declared that "no suit against the government of the United States shall be allowed under this act unless the same shall be brought within six years after the right accrued for which the claim is made," but contained no excepting clause in favor of married women or others. That act also declared all acts and parts of acts in conflict with it repealed. Greathouse was beyond the seas from 1886 to 1889, when his claim accrued, and until 1894, when his suit was commenced. In answer to the government's contention that the excepting clause in section 1069 was displaced by the later act the court held:

"The act of 1887 only superseded such previous legislation as was inconsistent with its provisions. It is true that, if that act be literally construed. there is some ground for holding that Congress intended by the proviso of section 1 to cover the whole subject of the limitation of suits against the government, in whatever court instituted. But we cannot suppose that it was intended to strike down the exceptions made in section 1069 of the Revised Statutes in favor of 'the claims of married women first accrued during marriage, of persons under the age of twenty-one years first accrued during minority, and of idiots, lunatics, insane persons, and persons beyond the seas at the time the claim accrued.' Those exceptions were not expressly abrogated by the act of 1887, and they could be held to be repaled only by implication. But repeals by implication are not favored, and when two statutes cover in whole or in part the same matter, and are not absolutely irreconcilable, effect should be given, if possible, to both of them. Frost v. Wenie, 157 U. S. 46, 58, 15 Sup. Ct. 532, 39 L. Ed. 614; United States v. Healey, 160 U. S. 136, 147, 16 Sup. Ct. 247, 40 L. Ed. 369. In conformity with this principle we must adjudge that the above proviso of section 1069 of the Revised Statutes is still in force, because not absolutely inconsistent with the last proviso of the act of 1887; consequently, that the claim of a person who was beyond the seas at the time the claim accrued is not barred until three years shall have expired after such disability is removed without suit against the government. Although the act of 1887 prescribes the limitation for suits 'under this [that] act,' without making any exception in favor of persons under disability, it should be interpreted as if the proviso in section 1069 of the Revised Statutes were added to section 1 of that act. We could not hold otherwise without deciding, in effect, that the limitation of six years applied to claims accruing to married women and infants during their respective disabilities, as well as to the claims of idiots, lunatics, and insane persons. We are unwilling to hold that Congress intended any such result."

Can reasonable purpose and operation be accorded to the special saving clause without impinging upon the purpose and operation of the general statute? If so, it is quite plain that the broad language of the former does not necessarily relate to the particular subject of the latter, and, therefore does not by necessary implication manifest an intention to supersede or repeal it. When we consider that the special saving clause was part of the Hepburn bill from the time of its introduction in the House of Representatives, and that the provision amending section 1 of the Elkins act did not become part of the bill until after it had passed the House of Representatives and was pending in the Senate, it is difficult to believe that the former has particular reference to the effect of the partial repeal wrought by the latter. And, when we consider that any ground which could have been reasonably advanced for enforcing the repealed law against offenders who were then indicted would have been equally applicable to others who, within the period prescribed by the statute of limitations, had offended in like manner, but were as yet unindicted, and also the marked contrast between the

explicit and appropriate terms of the general statute, which was presumptively in the mind of Congress, and the altogether different terms of the special saving clause, it is difficult to believe that the latter has any reference to the particular subject of the former, namely, the effect of a repealing act upon the enforcement of penalties, forfeitures, and liabilities incurred under the law repealed.

We turn, therefore, to the other provisions of the Hepburn act, in the light of which the special saving clause must be read, to ascertain whether or not they indicate that it has another purpose and field of operation, more consonant with reason and with its different language. That act fills 12 pages of the Statutes at Large and comprises 11 sections. Its purpose is that of perfecting the existing law regulatory of interstate commerce, and this is done by eliminating or changing old provisions deemed unsatisfactory, and by adding supplementary or auxiliary provisions intended to give greater strength and efficiency to the law. These changes all fall within the general category of amendments, but they differ widely in subject and operation. Some operate to repeal portions of the prior law imposing penalties, forfeitures, or liabilities, and therefore come within the explicit terms of the general saving clause (Rev. St. § 13). Others have more immediate relation to proceedings in the courts of the United States; and still others have immediate relation to proceedings before the Interstate Commerce Commission. Within the first class is the partial repeal of section 1 of the Elkins act, resulting from the insertion of the word "knowingly"; within the second are several of the changes in section 16 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 384 [U. S. Comp. St. 1901, p. 3165]), notably those relating to the procedure in the Circuit Courts upon petitions for the enforcement of orders of the Interstate Commerce Commission and that removing the pecuniary limitation upon the right of appeal to the Supreme Court in such cases; and within the third are the change in section 14, some of the changes in section 15, and the change in the opening paragraph of section 16. If proper regard be had to the subject and operation of these varied changes, and also to the settled operation of the general saving clause, with which Congress was presumptively familiar, it is reasonably plain, as we think, that the special saving clause, although speaking of the amendments collectively, is directed against such of them only as, in its absence, would affect causes then pending in the courts of the United States, and is intended merely to secure the continued prosecution, in the manner theretofore provided, of such pending causes as otherwise would be affected. In the presence of the general saving clause, pending causes for the enforcement of penalties, forfeitures, or liabilities would not be affected by the repeal of portions of the prior law imposing them; nor would pending causes in the courts be affected by the changes having immediate relation to proceedings before the Interstate Commerce Commission. Thus far, therefore, there was no occasion for a special saving clause in favor of causes then pending in the courts of the United States. But the changes having immediate relation to proceedings in those courts altered the situation; for they, if not restrained, would affect both pending and future causes. 2 Sutherland, St. Con. (2d Ed.) § 674; Railway Company v. Grant, 98 U. S.

398, 25 L. Ed. 231; Campbell v. Iron Mountain Silver Mining Co, 83 Fed. 643, 27 C. C. A. 646. Here, then, was occasion for a special saving clause, and the language of section 10 appears to have been well chosen to meet it. True, in the absence of the general saving clause, that language would be broad enough to also cover part of the ground covered by it—that is, to save such penalties, forfeitures, and liabilities as would be enforced by the continued prosecution of pending causes; but that is not a controlling guide to its meaning, in the presence of the general saving clause, for not only is the true intendment of language often dependent upon the circumstances in which it is used, but the state of the law when a statute is enacted is always an important factor in its interpretation. As before indicated, the special saving clause does not contain any term or expression which bears directly upon the effect of the repealing portions of the act upon existing penalties, forfeitures, and liabilities; nor does it contain anything which was not reasonably appropriate to the occasion, if Congress, mindful of the existence of the general saving clause and satisfied to leave it in undisturbed operation, was solicitous merely that the amendments bearing directly upon the jurisdiction and procedure of the courts of the United States should not affect causes then pending therein. In these circumstances we are persuaded that the special saving clause can be accorded reasonable purpose and operation by treating it as intended only to save such causes from what, in its absence and in the presence of the general saving clause, would be the effect of the amendments upon them; and we accordingly hold that, rightly interpreted, it does not cover any part of the particular subject of the general saving clause, and, therefore, does not by necessary implication manifest an intention to release or extinguish penalties, forfeitures, and liabilities for the enforcement of which no cause was then pending.

It follows that there was no error in the rulings of the District Court, and its judgment is affirmed.